UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

UNITED STATES OF AMERICA

v.                                                              DOCKET No.: 0100 2:22CR00059-001

TYLER STREETER

### SENTENCING MEMORANDUM

### BACKGROUND

Tyler Streeter was born in Norwich, New York. He was the fourth of 8 children born to Vickie and Fredrick Baum. An older brother died before Tyler was born. His biological father was physically and emotionally abusive. He would beat Tyler, his sisters, and his mom. At age 6, Tyler and his older brother went into foster care. The other siblings went to other foster homes.

At age 15, he and his brother were adopted by the Streeter family. Like his biological father, his adoptive father David Streeter was physically and emotionally abusive. He would "smack," and "choke" both Tyler and his older brother. He threw Tyler into a door. He threatened to shoot Tyler's older brother, James, with a gun.

At age 18, Tyler stole his adoptive father's truck, and got into a high-speed chase with the police. Tyler was upset with his adoptive father, and on his way to the wedding of his biological mom. He was arrested and charged as a youthful offender with second degree burglary. He pled guilty and was sentenced to two years in Madison County Jail.

1

Upon his release, he went to live with his biological mother. He worked stacking lumber at a lumber mill. He moved out of his mom's house and got an apartment with a co-worker. They split the bills.

After a year, the roommates got into an argument, and Tyler moved out, first back with his biological mother, and then with an uncle. During this time, Tyler began an inappropriate relationship with his 10-year-old niece, N. B.[1] He was 19 and she was 10. He eventually pled guilty to touching her genitals and was sentenced to 1-1/2 to 3 years in prison.

In 2015, before he went to prison, he met Nikita Crumb. He was 21 and she was 18. She became pregnant with their son, who was born when Tyler was in prison.

Nikita lived with Tyler's mom after he went to prison, until right before their son Jayce was born. Meanwhile, Tyler had the opportunity for early release from prison by taking a substance abuse treatment program and going on probation. Ultimately, he decided not to participate because "probation wasn't for me." He was released on June 22, 2020.

Following his release, he was charged with petty larceny, for stealing $340.00 from Theresa Randall. He used her bank card without permission. He was sentenced to 6 months in jail. He spent 4 months in jail and was released on probation.

---

[1] We have used initials to protect the privacy interests of the minor child.

Before he went to jail, he began an inappropriate online relationship with Minor A[2], a 16-year-old girl from Maine. They met on Tik Tok. She gave him her Instagram contact information. She told him that her father was physically abusive. He could easily relate to that, based on his own experiences. They corresponded by text for two months, sharing thousands of messages. He found her attractive. She was 16, and he was 26.

He told her that he wanted to bring her to New York and have sex with her. He described his sexual fantasies in graphic detail.

A few months later, he drove to Maine to meet Minor A in person. When she got into his car outside her house, her father came outside with a baseball bat. Minor A told Tyler to drive off, as her father chased them with his bat, and broke the rear window. Tyler and Minor A were able to get away and went to New York together.

A day later, the police arrived at the home of Tyler's sister in Syracuse, New York. They found Minor A and brought her back to Maine. She denied any sexual contact and declined to press charges.

Later, Tyler was charged with transporting a minor across state lines for an immoral purpose. The age of consent in New York is 17, making it a Federal crime to transport the 16-year-old minor to New York from Maine.

Since his arrest, Tyler has participated successfully in a prison industries program. He works 7-1/2 hours a day, 5 days a week, totaling 37.5 hours a week. He and other inmates help to assemble component parts for comcast cable box

---

[2] We have used Minor A to protect the privacy interests of the alleged victim.

cords, diacom, mixers, pin boxers, and pamphlets for a hospital in New Hampshire. He has earned $3,443.00 so far. He enjoys the work so much, he would "like to do my whole bid here, if I could."

Following his arrest, he began experiencing increased anxiety and racing thoughts, resulting in sleep issues. He describes a restless energy. He has been prescribed Clonidine for sleep.

With regard to MacKenzie, he felt "entitled to make her feel happy, because she remined me of what my sister was going through. I didn't want to intentionally harm her, just make her feel happy."

## ARGUMENT

**I.     The Court Should Not Add 2 Points for Sexual Act or Sexual Conduct.**

U.S.S.G. §2G1. 3 governs transportation of minors to engage in prohibited sexual conduct. Under that section, if the offense involved the commission of a sexual act or sexual contact, the base offense level is increased by 2 levels. U.S.S.G. §2G1.3 (b)(4). Sexual act is as defined in 18 U.S.C. § 2246 (2), including contact between the penis and vulva, penis and anus, mouth and penis, mouth and vulva, or mouth and anus. "Sexual Contact" means the intentional touching, either directly or through clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person. 18 U.S.C. § 2246 (3).

The PSR is devoid of actual evidence that sexual contact or a sexual act occurred. According to the PSR, "when Minor A was retrieved from New York, she had 'several prominent hickies on her neck.'" PSR at ¶ 8. According to Minor A's aunt, she found a "bloody towel in the bathroom after Minor A showered."

4

According to the Defendant's statement to the Norwich Police on 4/10/2020, "he denied having sex with Minor A, and stated that they only 'cuddled.'" PSR at ¶ 10.

Minor A cooperated with direct questioning by law enforcement. She also denied having sexual intercourse with Streeter. PSR at ¶ 11.

The Court cannot conclude, based on hickies and a bloody towel alone, that sexual contact or a sexual act occurred. There is no forensic evidence of sexual intercourse, and no evidence of genital trauma causing bleeding. The bloody towel could have resulted from the minor's period.

While the Defendant sent thousands of text messages over a period of months, some of which described graphic sex acts about which he fantasized, there is an absence of direct evidence of those acts; whether by eyewitness accounts, forensic findings or even any admission by either party. Also, the Defendant and the minor were together for only one day, much of which time was spent either driving from Maine to New York or sleeping. There was a limited amount of time for them to do more than "cuddle." Under these circumstances, the Court should not just impute the existence of sexual act or sexual contact.

## II.  The Court Should Impose a Downward Departure Based Upon a Circumstance not Identified in the Guidelines but Relevant to Sentencing.

The Court shall impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense to promote respect for the law, and to provide just punishment for the offenses; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the Defendant; and to provide the Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553 (a)(2).

5

The Court shall also consider the nature and the circumstances of the offense, and the history and characteristics of the Defendant. 18 U.S.C. § 3553 (a)(1). In sentencing a Defendant for an offense under Chapter 117 (child crimes and sexual offenses), the Court shall impose a sentence of the kind, and within the guideline range, unless the Court finds … that there exists a mitigation circumstances of a kind, or to a degree, that (i) has been a permissible ground of downward departure in the sentencing guidelines or policy statements, (ii) has not been taken into consideration by the sentencing commission in formulating the guidelines, and (iii) should result in a sentence different from that described. 18 U.S.C. § 3553 (b)(2)(A).

A departure may be warranted in the exceptional case in which there is present a circumstance that the commission has not identified in the guidelines, but that nevertheless is relevant to determining the appropriate sentence. U.S.S.G. §5K2.0 (a)(2)(B). Here, there is such an exceptional circumstance, as follows: If the Defendant made the same trip, for the same purpose, but in reverse (to transport the minor from New York to Maine), the result would be no crime. This is because, in Maine, the age of consent is 17. 17-A M.R.S.A. § 254. Thus, the very same conduct that would constitute statutory rape of a 16-year-old minor in New York would constitute lawful, consensual sex in Maine. In this exceptional case, the imposition of significant criminal penalties turns entirely on the vagaries of the final destination. Under these circumstances, the Commission might well question whether its statutory mission is being well served; particularly, since Congress sought reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders.

U.S.S.G Chapter 1, Pt. A (3) (the basic approach, policy statement). Under these exceptional circumstances, a departure under §5K2.0 is warranted.

### III. A Variant Sentence is Appropriate.

After U.S. v. Booker, 543 U.S. 220 (2005), parties are inherently on notice that the sentencing guidelines range is advisory. Irizarry v. U.S., 553 U.S. 708 (2008). Because the guidelines are now advisory, appellate review of sentencing decision is limited to determining whether they are "reasonable." Gall v. U.S., 552 U.S. 38 (2007). The district court may not presume the guidelines range is reasonable but must make an individualized assessment based on the facts presented. Id. While the guidelines are to be respectfully considered, they are only one factor among the §3553 (a) factors to be taken into account. U.S. v. Carty, 520 F.3d 984, 992 (9th Cir. 2008).

### III. a. The Defendant's History and Characteristics are Mitigating Factors.

Among the 3553 factors are the history and characteristics of the Defendant. In this case, the Defendant's father was an alcoholic and drug addict, who was abusive to him, to his mother, and his siblings. Tyler was placed in foster care at age 5. He was shuttled between foster homes until he was adopted in 2009, around the age of 15. He was then physically abused by his adoptive father. Five of his parents' six children were removed from the home at a young age due to his father's substance abuse and domestic violence. He has not spoken with his father since 2015.

Clearly, his traumatic childhood, including exposure to violence and substance abuse, and poor male role modeling, contributed to his arrested

development. At age 27, he was still hanging out with a teenager. It is no surprise that she complained that her own father was abusive. They bonded over that shared history. In Tyler's mind, he was returning to the scene of the original crime and trying to rescue Minor A from a similar, abusive environment.

His mental health issues, including anxiety and racing thoughts, may well derive from his past trauma. It is notable that, with medication and structure in place, he has been able to work successfully in prison industries.

### III. b. The Defendant's Prospects for Rehabilitation are a Mitigating Factor.

Tyler wants rehabilitation, including sex offender treatment. As evidence of his motivation for self-improvement, he has engaged in full-time employment in prison industries, working 37 hours a week for the last 3 months, and earning over $3,000.00 all while in prison. This demonstrates his motivation, his learning capacity, and, ultimately, his ability to become a contributing member of society. Unlike before, he will not escape the prospect of sex offender treatment while on supervised release. He now recognizes that he needs this long-term treatment.

### III. c. The Defendant's Age is a Mitigating Factor.

At age 28, Tyler is still young. Clearly, he has strayed from the path to a law-abiding life. He wants what we everyone wants, a life filled with meaning, with friendship, with love. His early upbringing gave him very little positive influence. Instead of love, he experienced only anger and violence. He never witnessed a healthy relationship between adult partners. He experienced family displacement, divorce, and foster care. The foster care system introduced him to renewed violence and displacement. He came to believe that no one cared. He acted out, with poor

boundary control, poor judgment, and poor self-esteem. He wanted love, but began looking for it in all the wrong places.

His case is one of arrested development. At age 28, he looks and acts much younger. He resembles a wounded child.

## **CONCLUSION**

To both deter and denounce the conduct, to protect the community, and to promote rehabilitation is always a delicate balance. In this case, the balance should weigh in favor of redemption. It should ensure that the Defendant knows he is not beyond redemption, and that his redemption begins now.

Accordingly, the Defendant should be sentenced to a term of 36 months, followed by a term of supervised release, with conditions including sex offender treatment.

DATED: September 15, 2022              */s/ Robert A. Levine*
                                       _____
                                       Robert A. Levine, Esquire
                                       Bar #3845
                                       Attorney for Defendant
                                       17 South Street
                                       Portland, ME  04101
                                       (207) 871-0036

CERTIFICATE OF SERVICE

I hereby certify that I have today filed the foregoing DEFENDANT'S SENTENCING MEMORANDUM using the CM/ECF system, which will cause a copy to be sent to all counsel of record.

DATED: September 15, 2022      */s/ Robert A. Levine*
_____
Robert A. Levine, Esq., Bar #3845
Attorney for Defendant
17 South Street
Portland, ME  04101
(207) 871-0036