UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TYLER STREETER | No. 2:22-cr-00059-NT |

**GOVERNMENT'S SENTENCING MEMORANDUM**

For all the reasons set forth below, the government respectfully submits that the two-level enhancement for "sexual contact" under U.S.S.G. §2G1.3(b)(4)(A) is supported by the evidence in this case, and that a significant sentence of imprisonment is warranted, given the defendant's history and characteristics and the seriousness of the offense. Accordingly, the government intends to recommend at sentencing that the Court impose a sentence of **108 months' imprisonment**, followed by a five-year term of supervised release.

**INTRODUCTION**

In late 2020, at the height of the pandemic, the defendant Tyler Streeter befriended a lonely and isolated 16-year-old girl from rural Maine on social media ("Minor A") and began a months-long relationship online with her. Revised PSR at Dkt. #20 ¶ 6. At the time, Streeter resided in Norwich, New York, and Minor A lived in Oxford County, Maine. *Id*. ¶ 6 and 7. Streeter was twenty-six years old at the time and, as noted above, the victim was only sixteen years old. *Id*. ¶ 6. Streeter knew that the victim was only sixteen. *Id*. ¶ 9.

Over the first few months of 2021, Streeter repeatedly told Minor A that she was gorgeous, that he loved her, and that he wanted to make her his wife. Streeter also sent several graphic messages to Minor A which evidenced his interest in having sexual

relations with her. In one exchange which took place on January 29, 2021, for example, Streeter wrote to Minor A in a string of messages: "What happens when I fuck u in 2 weeks and cum in u; and then parents find out ur pregnant." Minor A responded to this by stating, "I will move out if I'm pregnant." Streeter continued, noting: "okay; Ik I wont pull out and hate condoms." When Minor A asked Streeter where would she "go" if she became pregnant, Streeter responded, "Once I get in u I'm want keep going guess u come back here with me."

On February 6, 2021, Minor A sent Streeter a nude image of herself. Streeter responded, "Mmm; Ur pussy is so small and tight; Waiting for me to stretch it out." Minor A wrote back, "Lol come here." Streeter responded, "If I was there u would be getting slammed full force; for hours ur pussy be bleeding."

On April 5, 2021, Streeter traveled from upstate New York to Oxford County, Maine, for the purpose of picking Minor A up and taking her back to New York with him. Although Streeter late claimed that he did so for the purpose of "rescuing" Minor A from her purportedly abusive father, Sentencing Memorandum at Dkt. #23, at 3, notably at no point in any of their months-long online communications did Minor A ever indicate that she was being abused by her father. Nor did Streeter ever suggest that he was interested in meeting Minor A for any purpose other than sex.

Minor A snuck out of her home on the evening of April 5, 2021, without the consent or knowledge of her father and left the area in Streeter's car. Minor A's father discovered what was happening and attempted to stop Streeter unsuccessfully. Eventually an "Amber" alert was issued for Minor A, and she was found at the apartment of Streeter's sister Jolene Donaldson in Syracuse, New York, on April 6, 2021, by the Syracuse, New York Police Department. Afterwards, Minor A's aunt drove to New

2

York and returned with Minor A to her home in Maine.

After Minor A's aunt picked the victim up from the Syracuse Police Department, she noticed that Minor A had several prominent "hickies" on her neck. Minor A's aunt took photographs of those hickies and later shared them with federal law enforcement agents. Copies of those photographs are submitted herewith as Exhibits 1 and 2.

Streeter's sister Jolene Donaldson also noticed the hickies on Minor A's neck and would later testify before the grand jury that while Streeter and Minor A were at her apartment, Streeter repeatedly asked the victim if she would "shower" with him. Donaldson also testified that Streeter was "all over" Minor A – "like cuddly and kissing on her." *See* Exhibit 3 (G.J. Testimony of Jolene Donaldson), at 12, 15. Finally, Donaldson testified that there was a period of several hours before Streeter and Minor A arrived at her apartment when they were alone together in his car and not in contact with anyone else. *See id.* at 10-11. Minor A was eventually interviewed by law enforcement and denied that the pair ever had sexual intercourse (although she did acknowledge receiving the hickies from Streeter).

Streeter was subsequently arrested and charged federally, and ultimately pled guilty to a violation of 18 U.S.C. § 2421. Revised PSR at Dkt. #20 ¶¶ 4, 5. Streeter is now before the Court for sentencing.

## GOVERNMENT'S POSITION

Streeter faces a statutory maximum sentence of 10 years imprisonment. Revised PSR at Dkt. #20 ¶ 53. The Court may impose a supervised release term of between five years and life. *Id.* ¶ 56. A fine of up to $250,000 may be imposed, and a $100 special assessment is mandatory. *Id.* ¶¶ 60 and 61. Restitution is mandatory, but no restitution requests have been received. *Id.* ¶¶ 65 and 66.

**I.    Streeter's Advisory Sentencing Guidelines Are Properly Calculated**

The revised PSR calculates Streeter's guidelines in the following way:

| Base offense level | 24 | § 2G1.3(a)(4) |
|---|---|---|
| Use of computer | +2 | § 2G1.3(b)(3)(a) |
| Sexual contact | +2 | § 2G1.3(b)(4)(A) |
| Acceptance of responsibility | -3 | § 3E1.1 |
| **Total Offense Level** | **25** | |

Revised PSR at Dkt. #20 ¶¶ 16–27. The government agrees that all of the guideline enhancements correctly apply. At Criminal History Category V, Streeter's advisory guidelines range is 100 to 125 months. *Id.* ¶ 54. However, because the offense of conviction carries only a ten-year statutory maximum, the effective guideline range is 100 to 120 months. *Id.*

The only contested guideline issue is whether Streeter should receive a two-level enhancement under U.S.S.G. §2G1.3(b)(4)(A) because the offense involved "sexual contact." Revised PSR at Dkt. #20 ¶¶ 21-22. For the reasons stated below, the government respectfully submits that the enhancement is supported by the evidence and therefore should be applied.

As a threshold matter, the government need only establish that sexual contact occurred by a preponderance of the evidence. *See United States v. Almeida*, 748 F.3d 41, 53 (1st Cir. 2014) ("It is the government's burden at sentencing to prove sentencing enhancement factors by a preponderance of the evidence, and a district court may base

4

its determinations on 'any evidence that it reasonably finds to be reliable.'") (*quoting United States v. Walker,* 665 F.3d 212, 232 (1st Cir. 2011)). Moreover, in determining whether an enhancement should apply, a sentencing court "'is entitled to rely on circumstantial evidence, and draw plausible inferences therefrom.'" *United States v. Cannon,* 589 F.3d 514, 517 (1st Cir. 2009) (internal citation omitted).

In this case, the government respectfully submits that based on all the circumstantial evidence described above, the Court is entitled to (and should) draw the inference that there was some sort of "sexual contact" between Streeter and Minor A during the hours-long period when they were alone together in his car and before they arrived at Streeter's sister's apartment in Syracuse.[1]

First, we know from the graphic text messages in this case that Streeter wanted to have sex with Minor A. His intentions could not have been clearer in that regard. (Indeed, he pled guilty to transporting Minor A with the intent to engage in unlawful sexual activity.) Streeter also traveled over six hours by car (each way) to pick Minor A up and take her back to Syracuse – a not inconsequential effort that further evidenced his desire to convert their months-long online sexual banter into reality.

Second, in addition to have the requisite motive, Streeter also had the time and opportunity to have sexual contact with Minor A before he arrived at Jolene Donaldson's apartment. As Ms. Donaldson testified, Streeter dropped off his traveling companion at her home in New York around 6:00 in the morning on April 6, 2021, and

---

[1] As Probation correctly notes (and the defense does not dispute), "sexual contact" is defined broadly under the guidelines (which cross-reference 18 U.S.C. § 2246(3)) to include the "intentional touching, either directly *or through the clothing,* of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to … arouse or gratify the sexual desire of any person." *See* 18 U.S.C. § 2246(3) (emphasis added).

5

did not arrive at Donaldson's apartment with Minor A until noontime. Exh. 3, at 10. As Donaldson noted before the grand jury, the distance between the two locations was an hour and fifteen minutes by car ("if you do the speed limit") – leaving Streeter ample time to have sexual contact with Minor A in his car. *Id.*

Third, when Streeter and Minor A arrived at Donaldson's apartment, Minor A had visible "hickies" on her neck. *See* Exh. 3, at 12, 17. It defies common sense to believe that Streeter would have given those to Minor A without touching her in a sexual manner. And finally, even after Streeter brought Minor A to his sister's apartment, he continued to touch Minor A in an intimate and romantic way and repeatedly asked Minor A to shower with him. Any one of these facts alone would arguably be sufficient to support a finding of "sexual contact"; in combination, however, they paint a compelling picture of what likely transpired between Streeter and Minor A when they were alone in his car.

## II.   A Significant Sentence of Incarceration Is Appropriate

The government believes that a guideline sentence of imprisonment for 108 months is sufficient, but not greater than necessary, to comply with the statutory purposes of sentencing set forth in 18 U.S.C. § 3553(a).

The revised Presentence Investigation Report accurately describes Streeter's lengthy criminal history, including the fact that Streeter sexually molested his own eleven-year-old niece in 2017, when he was 22. Revised PSR at Dkt. #20 ¶ 31. Notably, his offense conduct in that case was eerily similar to the offense conduct in this case. Streeter began grooming his niece when she was only ten, sending her sexually graphic photos and images of himself over social media (Facebook) and inducing her to send him sexually graphic photos of herself. *Id.* Then, when he had the opportunity to be

alone with her, he touched his prepubescent niece sexually, placing his hands "on her buttocks and vagina for the purpose of gratifying his own sexual desire." *Id.*[2]

In short, Streeter is a predator who preys on vulnerable young women to satisfy his deviant sexual interests. For that reason, the government believes that a significant sentence of incarceration is appropriate.

### III. The Government's Recommended Sentence Fulfills the Statutory Purposes of Sentencing

The government submits that its recommended sentence is also appropriate under 18 U.S.C. § 3553(a). In addition to the nature and circumstances of the offense, discussed above, and Streeter's history and characteristics, the other statutory factors also support the imposition of this sentence.

#### A. Seriousness of Offense, Respect for the Law, Just Punishment

The Court also must consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and provide just punishment for the offense. *See* 18 U.S.C. § 3553(a)(2)(A). These factors are related. As the court noted in *United States v. Stern*, 590 F. Supp. 2d 945 (N.D. Ohio 2008), "There is no reason to believe that respect for the law will increase if a defendant who deserves leniency is sentenced harshly any more than there is reason to believe that respect for the law will increase if a defendant who deserves a harsh punishment receives a slap on the wrist." *Id.* at 957.

In this case, Streeter's offense was disturbing and serious. He traveled all the

---

[2] The fact that Streeter engaged in virtually identical misconduct only three years before meeting Minor A is also something that the Court can take into consideration in determining whether any "sexual contact" occurred in this case. *See, e.g.,* Fed.R.Evid. 413(a) (permitting a court to consider the fact that a defendant committed a prior sexual assault on "any matter which is relevant" in a new sexual assault case).

7

way from upstate New York to collect a very vulnerable young woman at the height of the pandemic and take her back to New York with no clear plan in mind other than to engage in whatever sexual contact with her that he could get away with. But for the swift reaction of Minor A's father and the Oxford County Sheriff's Department, Minor A would have remained in Streeter's grasp, and at his disposal, indefinitely. It is extremely disturbing to consider what fate might have befallen Minor A had she not been recovered as quickly as she was.

### B. General and Specific Deterrence

The Court also must consider the need for the sentence imposed to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant. *See* 18 U.S.C. § 3553(a)(2)(B), (C). These two factors are sometimes said to reflect the needs for general and specific deterrence. *See, e.g.*, *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010). With respect to the former, the government believes that it is important to send the message that those who exploit minors for their own sexual gratification will always be punished harshly.

With respect to the latter, as noted above, Streeter is clearly a predator who enjoys having sexual contact with underage females. His inability to control his behavior is troubling, and it does not appear that he has taken any steps to address the root causes of his behavior. Instead, he has attempted in this case to shift the blame for his conduct on the victim's family, shamelessly accusing Minor A's father of abuse without a shred of evidence.[3] A lengthy term of imprisonment will ensure that Streeter does not

---

[3] Even assuming *arguendo* that Minor A's homelife was miserable – for whatever reason – that fact only made Minor A *more* vulnerable to Streeter's overtures. Streeter's empty promises of a better life in New York were undoubtedly appealing to a girl who may have felt trapped and hopeless in her isolated, rural

8

victimize others for the foreseeable future.

### C. Training and Treatment

The Court must also consider the need for the sentence imposed to provide Streeter with needed training or treatment. *See* 18 U.S.C. § 3553(a)(2)(D). The government's recommended sentence will provide Streeter with the opportunity to obtain needed mental health and sex offender treatment, as recommended in the PSR, should he choose to avail himself of it.

### D. Sentencing Disparities

Finally, the Court must also consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *See* 18 U.S.C. § 3553(a)(6). In *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court concluded that when a sentencing judge correctly calculates and carefully reviews the Guidelines range, he or she necessarily gives significant weight and consideration to the need to avoid unwarranted disparities. *See id.* at 54. The government submits that guideline sentence it is recommending adequately addresses this factor.

---

Maine home.

**III.   A Downward Departure is Not Warranted in this Case**

Finally, Streeter argues in his sentencing memo that he should receive a downward departure because the conduct in this case would have been "lawful" in Maine. Sentencing Memorandum at Dkt. #23, at 6 (rehashing the same arguments that he made when he moved to dismiss the indictment). This argument is without merit or precedent.

First, as the Sentencing Guidelines make clear, downward departures in cases involving child crimes and sexual offenses may only be granted if the court finds, *inter alia,* "that there exists a mitigating circumstance of a kind, or to a degree, that has been *affirmatively and specifically* identified as a permissible ground of downward departure in the sentencing guidelines or policy statements issued under [28 U.S.C. § 994(a)]..." *See* U.S.S.G. §2K2.0(b)(emphasis added). In this case, the grounds offered by Streeter clearly have not been identified as a permissible basis for a downward departure in these types of cases.

Second, there is no reason to believe (as Streeter argues) that the Sentencing Commission would not have been aware of the fact that the age of consent varies from state to state. Indeed, to the contrary, these variances are well-known and well-documented, as Exhibit 2 to the Streeter's Sentencing Memorandum aptly demonstrates. Supplement to Sentencing Memorandum at Dkt. #27-2 (excerpt from website cataloguing the varying ages of consent across the United States).

Finally, setting aside the fact that Streeter offers no support for this novel proposition, this argument invites the Court to set a dangerous precedent. Every Court to consider equal protection and due process claims predicated on similar arguments about disparities between different state criminal codes has rejected those arguments

and affirmed the government's ability to prosecute those who violate the law in their home jurisdictions, including this Court. Any downward departure based on the fact that certain conduct might be lawful elsewhere would be an invitation for defendants to minimize liability for their criminal activity by engaging in a virtual form of "forum shopping" at the sentencing phase of their case. That clearly cannot be the outcome envisioned by Congress or the Sentencing Commission when the guidelines were enacted.

## CONCLUSION

For the reasons stated above, the government recommends that the Court impose a sentence of imprisonment of 108 months, followed by supervised release for five years.

Date:  January 18, 2023    Respectfully Submitted,

DARCIE N. MCELWEE
United States Attorney

*/s/ Sheila W. Sawyer*

SHEILA W. SAWYER
Assistant United States Attorney
U.S. Attorney's Office
100 Middle Street
Portland, Maine 04101
(207) 780-3257
Sheila.Sawyer@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on January 18, 2023, I electronically filed the foregoing Sentencing Memorandum using the CM/ECF system which will send notifications of such filing(s) to all counsel of record.

                                      DARCIE N. MCELWEE
                                      United States Attorney

by:     */s/ Grace Herrick*
                                      GRACE HERRICK
                                      Paralegal Specialist

on behalf of:  SHEILA W. SAWYER
                                      Assistant United States Attorney
                                      U.S. Attorney's Office
                                      100 Middle Street
                                      Portland, Maine 04101
                                      (207) 780-3257
                                      Sheila.Sawyer@usdoj.gov